**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | | |
|---|---|---|---|
| BOOMER DEVELOPMENT, LLC, *et al.*, | : | | |
| | : | | |
| Plaintiffs, | : | Civil Action No.: | 16-2225 (RC) |
| | : | | |
| v. | : | Re Document No.: | 10 |
| | : | | |
| NATIONAL ASSOCIATION OF HOME | : | | |
| BUILDERS OF THE UNITED STATES, | : | | |
| | : | | |
| Defendant. | : | | |

## MEMORANDUM OPINION

**GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION TO DISMISS**

## I. INTRODUCTION

Beginning in 2014, the National Association of Home Builders of the United States

("NAHB"), a Nevada nonprofit trade association, allegedly began promoting a loan program

offered by North Star Finance LLC ("North Star") to NAHB members and prospective members.

Compl. ¶¶ 9, 13–14, ECF No. 1–13.  Under the program, members were allegedly offered non-

recourse debt financing for building projects up to $10 million at attractive interest rates and with

other favorable terms.  Compl. ¶ 13. Plaintiffs, who were members or prospective members of

NAHB, allege that they applied to the loan program and paid application fees ranging from

$30,000 to $190,000 in reliance on representations made by NAHB, which they claim suggested

NAHB had reviewed and approved of North Star. [1]  *See* Compl. ¶¶ 83, 102, 125–28.  Ultimately,

---

[1] The ten Plaintiffs that have brought this action are Boomer Development, LLC
("Boomer"), Sierra's Glen Partners II and Sierra's Glen Partners V, LP (collectively "Sierra's
Glen"), Cotswold Homes, LLC and Skywatch Group (collectively "Skywatch"), Davis
Contracting and Development, Inc. ("Davis"), Biltmore Development LLC ("Biltmore"),
Bloomfield Construction, Inc. ("Bloomfield"), Thomas Dostal Developers, Inc. ("Dostal"), and
Concord Development Co., LLC ("Concord").  Compl. ¶¶ 1–8.

however, North Star's financing never materialized because that program was, in reality, a fraudulent investment scheme carried out by North Star. *See* Compl. ¶¶ 28–29. In addition to losing monies paid for application fees, Plaintiffs also claim they lost expected profits and incurred development costs in connection with construction projects that they were unable to complete in the absence of the promised financing. Compl. ¶ 128. In June 2016, Plaintiffs filed this lawsuit, not against North Star, but directly against the NAHB for fraudulent misrepresentation (Count I), negligent misrepresentation (Count II), breach of fiduciary duty (Count III), and fraudulent inducement (Count IV), Compl. at 20–24, though Plaintiffs later conceded their fraudulent inducement claims,[2] Pls.' Opp'n at 22, ECF No. 20.

This matter now comes before the Court on Defendant's motion to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. *See generally* Def.'s Mot. to Dismiss, ECF No. 10. For the reasons below, the Court grants the motion in part and denies the motion in part; dismissing without prejudice the fraudulent and negligent misrepresentation claims (Counts I and II) as to Plaintiffs Boomer, Davis, Biltmore, Bloomfield, and Dostal and dismissing the breach of fiduciary duty claims (Count III) in their entirety without prejudice.

## II. FACTUAL BACKGROUND[3]

In late 2013 and early 2014, the NAHB, a Nevada nonprofit trade association with its principal place of business in Washington, D.C., entered into an agreement with North Star to offer a financing program for current and prospective members of the NAHB. Compl. ¶¶ 9, 13. Under the program, members could obtain non-recourse debt financing for projects up to $10

---

[2] For this reason, the Court formally dismisses Count IV.

[3] At the motion to dismiss stage, the Court accepts the plaintiff's factual allegations as true. *See, e.g., United States v. Philip Morris, Inc.*, 116 F.Supp.2d 131, 135 (D.D.C. 2000).

million at interests rates that were at or below available market rates and included other favorable terms. Compl. ¶ 13.

NAHB first announced the North Star program in February 2014 at the NAHB's annual Home Builders Show in Las Vegas, Nevada. *See* Compl. ¶¶ 14–15. The program was introduced at various points throughout the Show by prominent NAHB representatives. Compl. ¶¶ 15–16. Indeed, among others, the program was touted by Rick Judson, the Chairman of NAHB's Board of Directors and the supposed first loan applicant of the North Star program, and by Thomas Vetter, an NAHB Executive Board Member who the NAHB awarded a Lifetime Achievement Award in the area of building finance at the conference. Compl. ¶ 16. During the presentations, attendees were told that the program was an NAHB program available only to NAHB members and that, if they were interested in applying, they should provide their contact information to NAHB personnel. Compl. ¶ 17–18. Attendees were also advised that NAHB and North Star intended to enter into an "affinity" program whereby the NAHB would receive a share of the application fees that loan applicants paid to North Star. Compl. at ¶ 19. Plaintiffs allege their belief that NAHB and North Star ultimately entered into such an arrangement. *See* Compl. ¶ 19. The NAHB also permitted North Star to indicate on its website that the North Star program was being "conducted in conjunction with and under the auspices of the NAHB." Compl. ¶ 20.

Following the conference, the NAHB continued to promote and disseminate information about the North Star program to its members and others. The NAHB provided information about the program to its state and local affiliates and recommended that they refer any interested persons to NAHB for additional details. Compl. ¶ 21. When contacted, the NAHB provided information about the program, instructed interested persons on how to contact North Star to

apply, and also provided certain assurances. Compl. ¶ 23. According to the Complaint, the NAHB assured many of the Plaintiffs, either before or after they applied for loans, of the "soundness," "integrity[,] and safety of the North Star program." Compl. ¶¶ 22, 50, 51, 60, 85, 106, 116. Furthermore, some Plaintiffs allege that the NAHB claimed that it was "well informed about the North Star program," Compl. ¶¶ 22, 103, or that "the North Star program had been vetted by the NAHB," Compl ¶ 111. These alleged representations were made by senior NAHB officers and directors, including Mr. Judson, Mr. Vetter, Rebecca Froass, a Director for NAHB's Financial Institutions and Capital Markets, and Richard Krump, legal counsel to NAHB, via telephone conversations and email correspondence. *See* Compl. ¶¶ 22, 50, 51, 60, 85, 103, 106, 111, 116. According to Plaintiffs, the NAHB both intended and expected that its various actions endorsing the North Star program would result in NAHB members and prospective members applying to the program because it was being offered at a time when "conventional financing at reasonable rates was generally not available for home building projects costing up to $10 million." Compl. ¶¶ 26 121–123. Despite the NAHB's general promotion of the North Star program or its assurances concerning its soundness, the NAHB had never undertaken any reasonable steps to confirm independently the qualifications of North Star's operators, the accuracy of North Star's representations about the program, or the merits of the program generally. Compl. ¶ 25.

The ten Plaintiffs in this case allege that they applied for the North Star program and paid substantial fees to North Star and an associated firm, called Capital Source Funding ("Capital Source"), in reliance on various representations made by the NAHB. *See* Compl. ¶¶ 39, 53, 58, 63–64, 74, 83, 92–93, 101–102, 115, 125–127. According to Plaintiffs, these representations suggested that "the NAHB had reviewed and approved of the North Star

program." Compl. ¶ 125.  The Plaintiffs then spent months attempting to obtain the loan

proceeds, but the North Star financing never materialized.  *See* Compl. ¶¶ 40, 55, 66, 77, 87, 96,

108, 118.  Although Capital Source agreed to refund portions of the Plaintiffs' application fees,

North Star refused to provide Plaintiffs with any refunds whatsoever.  *See* Compl. ¶¶ 40, 55, 66,

77, 87, 96, 108, 118.  In May 2015, it was revealed that the North Star program was, in reality, a

fraudulent investment scheme when the Securities and Exchange Commission filed a federal

lawsuit against North Star and others.  Compl. ¶ 28.

On June 21, 2016, Plaintiffs commenced this suit against the NAHB in the Pennsylvania

Court of Common Pleas alleging intentional misrepresentation, negligent misrepresentation,

breach of fiduciary duties, and fraudulent inducement.  *See* Compl. at 20–24.  The NAHB

subsequently removed the action to the United States District Court for the Middle District of

Pennsylvania on July 11, 2016, invoking diversity jurisdiction under 28 U.S.C. § 1332.  *See*

Notice of Removal at 2, ECF No. 1.  Thereafter, on August 1, 2016, NAHB filed a motion to

dismiss the action for improper venue, lack of jurisdiction, and for failure to state a claim under

Rules 12(b)(2), 12(b)(3), and 12(b)(6) of the Federal Rules of Civil Procedure.  *See* Def.'s Mot.

to Dismiss, ECF No. 10.  In the course of briefing that motion, Plaintiffs conceded their

fraudulent inducement claims.  *See* Pls.' Opp'n at 22.  Once the motion was fully briefed, the

district court concluded that it did not have personal jurisdiction over the NAHB, but declined to

dismiss the case, finding that such dismissal would not be in the interests of justice.  *See* Mem. at

11–12, ECF No. 24.  Instead, it transferred the matter to this Court pursuant to 28 U.S.C. § 1631

after it determined that jurisdiction existed and that venue was proper.  *See* Mem. at 11–12.

Because the district court did not have jurisdiction over the matter, it did not reach the merits of

Defendant's motion under Rule 12(b)(6) and deferred the resolution of that part of the motion to this Court. *See* Order at 1, ECF No. 25.

## III. ANALYSIS

NAHB has moved to dismiss the three remaining counts of Plaintiffs' Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6). As described below, the Court grants the motion in part and denies the motion in part, dismissing Counts I and II with respect to Plaintiffs Boomer, Davis, Bloomfield, Biltmore, and Dostal and dismissing Count III in its entirety.

### A. Choice of Law

Before reaching the merits of the NAHB's motion, the Court must first determine which state's laws should govern Plaintiffs' claims. In cases transferred pursuant 28 U.S.C. § 1631, "the action or appeal shall proceed as if it had been filed or noticed for the court to which it is transferred . . ." 28 U.S.C. § 1631. In such cases, federal courts "apply the choice-of-law rules of the forum state—here, the District of Columbia." *In re APA Assessment Fee Litig.*, 766 F.3d 39, 51 (D.C. Cir. 2014). The District of Columbia "employ[s] a modified governmental interests analysis which seeks to identify the jurisdiction with the most significant relationship to the dispute." *Washkoviak v. Student Loan Mktg. Ass'n*, 900 A.2d 168, 180 (D.C. 2006) (citations omitted). Under this approach, a court must first "determine whether a 'true conflict' exists— that is, whether more than one jurisdiction has a potential interest in having its law applied and, if so, whether the law of the competing jurisdictions is different." *GEICO v. Fetisoff*, 958 F.2d 1137, 1141 (D.C. Cir. 1992) (citing *Eli Lilly & Co. v. Home Ins. Co.*, 764 F.2d 876, 882 (D.C. Cir. 1985); *Fowler v. A & A Co.*, 262 A.2d 344, 348 (D.C. 1970)). If "there is no 'true conflict'" among the purportedly interested jurisdictions, and where one of those jurisdictions is the District of Columbia, a court will "apply the law of the District of Columbia by default."

*GEICO*, 958 F.2d at 1141 (citing *Fowler*, 262 A.2d at 348; Restatement (Second) of Conflict of Laws § 186 cmt. c (Am. Law Inst. 1971)). But if a "true conflict" does exist, "the court must go on to determine which of the relevant jurisdictions has the 'more substantial interest' in having its law applied to the case under review." *GEICO*, 958 F.2d at 1141 (citation omitted). To make that determination, a court must consider the four significant relationship factors "enumerated in the Restatement (Second) of Conflict of Laws § 145" which are: (1) "the place where the injury occurred," (2) "the place where the conduct causing the injury occurred," (3) "the domicile, residence, nationality, place of incorporation and place of business of the parties," and (4) "the place where the relationship is centered." *District of Columbia v. Coleman*, 667 A.2d 811, 816 (D.C.1995) (quoting Restatement (Second) of Conflict of Laws § 145). In cases involving multiple claims, a court "need not decide all issues under a single jurisdiction's law." *Paxton v. Wash. Hosp. Ctr. Corp.*, 991 F. Supp. 2d 29, 31 (D.D.C. 2013); *see also Logan v. Providence Hosp., Inc.*, 778 A.2d 275, 280 (D.C. 2001) ("[D]ifferent law may apply to different issues in a lawsuit.").

Here, the Court finds that it is appropriate to apply Nevada law to Plaintiffs' breach of fiduciary duty claims and D.C. law to Plaintiffs' fraudulent and negligent misrepresentation claims. Nevada law governs Plaintiffs' breach of fiduciary duty claims because Nevada, as the state where the NAHB is incorporated, has the most substantial interest in those claims. The District of Columbia, like most other states, adheres to the choice of law principle known as the "internal affairs doctrine." Under that doctrine, the District of Columbia applies the law of the state of incorporation with respect to claims involving an organization's corporate governance and internal affairs. *See, e.g., Labovitz v. Wash. Times Corp.*, 900 F. Supp. 500, 503 (D.D.C.1995) ("When a particular claim addresses matters of corporate governance or other

internal affairs of the organization, most states apply the law of the state where the corporation is

incorporated, and the District of Columbia follows suit.") (citations omitted); *see also Edgar v.*

*MITE Corp.*, 457 U.S. 624, 645 (1982) (describing the doctrine as "a conflict of laws principle

which recognizes that only one State should have the authority to regulate a corporation's

internal affairs"). The District of Columbia recognizes that the "state of incorporation has a

strong interest in having its law applied to matters of corporate governance and other internal

affairs for the obvious reason that the corporation exists under its laws." *Labovitz*, 900 F. Supp.

at 503 (D.D.C. 1995). Here, the sole basis for the parties' alleged fiduciary relationship is the

Plaintiffs' membership in the NAHB. Because this claim concerns the existence and extent of

the fiduciary duties that the NAHB owes to members of its nonprofit trade association and the

NAHB is incorporated in Nevada, this Court must apply Nevada law. *See Edgar*, 457 U.S. at

645 (explaining that internal affairs doctrine applies to matters "peculiar to the relationships

among or between the corporation and its current officers, directors, and shareholders").

Determining the law to apply to Plaintiffs' fraudulent and negligent misrepresentation

claims, however, is more complicated. Under the facts alleged in the Complaint, there are ten

jurisdictions with potential interests in having their laws applied: the District of Columbia (where

NAHB's principal place of business is located), Nevada (where NAHB is incorporated and

where NAHB first announced the North Star program), and eight other states where the Plaintiffs

maintain their principal places of business.[4] *See* Compl. ¶¶ 1–9, 14. Each of these jurisdictions

has an equally powerful interest in having its laws applied because, while the states where the

Plaintiffs reside have "a powerful interest in protecting [their] residents from fraud and

---

[4] Those states are Florida, Georgia, Iowa, Michigan, Minnesota, New York,
Pennsylvania, and Texas. Compl. ¶¶ 1–8.

misrepresentation," the District of Columbia and Nevada have "an equally strong interest in ensuring that [their] corporate citizens refrain from fraudulent activities." *Washkoviak,* 900 A.2d at 180–81.

Despite the large number of potential jurisdictions, neither party has made any attempt to identify which state's laws govern these claims. Indeed, the NAHB expressly noted in its memorandum in support of its motion that it had "not engaged in an exhaustive analysis of the tort law in all states whose laws could conceivably apply," opting instead to cite cases from "jurisdictions that appear to be consistent with the prevailing law in most states." Def.'s Mem. Supp. Mot. to Dismiss at 14 n.10, ECF No. 11 ("Def.'s Mem."). Plaintiffs similarly did not address the choice of law inquiry nor did they dispute the NAHB's citation to the general "prevailing law." *See generally* Pls.' Opp'n. Even after the case was transferred, both parties continued to agree that the motion was "fully briefed and ripe for consideration and resolution by this Court." Joint Status Report ¶ 2, ECF No. 32. Because the parties appear to be content relying on the "prevailing law," instead of the laws of any particular state or states, the Court understands the parties to have assumed that there is no "true conflict" among the jurisdictions and deems the parties to have waived any argument to the contrary for purposes of this motion. *See CSX Transp., Inc. v. Commercial Union Ins. Co.*, 82 F.3d 478, 482–83 (D.C. Cir. 1996) (parties may waive choice-of-law arguments); *C & E Servs., Inc. v. Ashland, Inc.*, 498 F. Supp. 2d 242, 255 n.5 (D.D.C. 2007) (same). Where parties make such assumptions with respect to matters pertaining to choice of law, the Court need not second-guess them. *See In re Korean Air Lines Disaster of Sept. 1, 1983*, 932 F.2d 1475, 1495 (D.C. Cir. 1991) ("[C]ourts need not address choice of law questions *sua sponte*"); *Davis v. Grant Park Nursing Home LP*, 639 F. Supp. 2d 60, 65 (D.D.C. 2009) (explaining that, where all parties assume that D.C. law applies,

"[t]he Court need not and does not question the parties' assumptions on that point").  Thus, in the absence of a "true conflict," it is appropriate to apply D.C. law by default.  *See GEICO*, 958 F.2d at 1141 (applying D.C. law because "there is no 'true conflict'" among the jurisdictions).

However, for the avoidance of doubt, the Court finds that it would still be appropriate to apply D.C. law even if it were to assume that some true conflict existed because, on balance, the four significant relationship factors enumerated in the Restatement (Second) of Conflict of Laws § 145 do not clearly point to any particular jurisdiction.  The first factor—the place where Plaintiffs' injuries occurred—weighs in favor of applying the laws of the states where the Plaintiffs reside.  In a typical misrepresentation case, the injury occurs where the plaintiff "received the alleged misrepresentations" or made the alleged payments.  *See Washkoviak*, 900 A.2d at 181.  Here, the Plaintiffs allege that they relied upon misrepresentations that the NAHB made via telephone or email.[5]  *See* Compl. ¶¶ 37–38, 45–46, 49–51, 59–60, 70–71, 74–75, 82, 84–85, 104–106, 111–113.  Although the Complaint does not specify where the Plaintiffs received the telephone or email communications or where the Plaintiffs made their payments to North Star, it is reasonable to infer that they occurred in the states where Plaintiffs maintain their principal places of business.  *See In re APA Assessment Fee Litig.*, 766 F.3d 39, 54 (D.C. Cir. 2014) ("[T]he place of injury here was California, where the relevant subclass of plaintiffs received their dues statements and presumably paid the special assessments."); *In re U.S. Office Prod. Co. Sec. Litig.*, 251 F. Supp. 2d 77, 92 (D.D.C. 2003) ("[P]laintiffs' financial losses most likely occurred where they lived, though this is not specifically alleged in the complaint.").

---

[5] Although Plaintiffs allege that NAHB first announced the North Star program at NAHB's 2014 Home Builders Show in Las Vegas, Nevada, Compl. ¶¶ 14–15, they do not allege that NAHB made any misrepresentations at the conference.  Thus, this factor does not weigh in favor of applying Nevada law.

Accordingly, the Court finds that the first factor weighs in favor of applying the laws of the various states in which each of the Plaintiffs maintain their principal places of business.

The Court next considers "the place where the conduct causing the injury occurred" and finds that this factor weighs moderately in favor of applying D.C. law. In cases such as this, both the D.C. Court of Appeals and the D.C. Circuit have looked to the place where the statements at issue were "formulated and transmitted." *See In re APA Assessment Fee Litig.*, 766 F.3d at 54; *Washkoviak*, 900 A.2d at 181. Here, neither the Complaint nor the parties have suggested any place where the NAHB conceived of any misrepresentation or any place from which it transmitted misstatements through telephone calls or emails.[6] However, the Complaint does allege that NAHB maintains its principal place of business in Washington, D.C., Compl. ¶ 9, and it is therefore reasonable to infer that NAHB either formulated or transmitted some or all of the representations from there. As a result, the Court finds that this factor weighs at least moderately in favor of D.C. law. *See In re APA Assessment Fee Litig.*, 766 F.3d at 54 (holding that "second factor weighs at least moderately towards D.C. law given that neither side has suggested any other location where the conduct could have occurred" and complaint alleged only that "defendants had their principal place of business in Washington, D.C. and that significant events giving rise to this case took place in this District.") (internal quotations omitted).

The third factor, which involves consideration of the parties' residences and places of business, does not weigh in favor of any jurisdiction. The NAHB is incorporated in Nevada with its principal place of business in the District of Columbia and the ten Plaintiffs maintain their

---

[6] As discussed above, Plaintiffs do not allege that NAHB made any misrepresentations at NAHB's 2014 Home Builders Show. Thus, the Court does not find that this factor weighs in favor of applying Nevada law.

principal places of business across eight other states.[7]  *See* Compl. ¶¶ 1–9.  Because all of the parties hail from various locations across the United States, the Court finds that the third factor "splits evenly" among the various jurisdictions.  *See In re APA Assessment Fee Litig.*, 766 F.3d at 54.

Finally, the Court considers the fourth § 145 factor—"the place where the relationship, if any, between the parties is centered"—and finds that it too does not favor any jurisdiction.  In *In re APA Assessment Fee Litigation*, the D.C. Circuit held that the fourth factor did not weigh strongly in favor of any jurisdiction because "the parties cite[d] no case law directly addressing where the relationship between a national nonprofit organization and its members [was] 'centered.'"  766 F.3d at 54.  Here, as in *In re APA Assessment Fee Litigation*, the parties have neither advanced any argument nor pointed to any case law suggesting where the relationship between NAHB, a national nonprofit organization, and its members is centered.  Thus, the Court finds that this factor also does not weigh in favor of any jurisdiction.

Because the § 145 factors, on balance, do not weigh in favor of any particular jurisdiction or jurisdictions, D.C. law should be applied to Plaintiffs' misrepresentation claims.  In weighing the various factors, the Court must compare and evaluate them on "a qualitative rather than quantitative scale."  *Washkoviak*, 900 A.2d at 181 (citations omitted).  Although the place-of-injury factor weighs in favor of the states where the Plaintiffs maintain their principal places of business, the District of Columbia courts give this factor less weight in fraud cases because the

---

[7] The only two states that are shared by any of the Plaintiffs are Pennsylvania, where Sierra's Glen Partners II and Sierra's Glen Partners V, LP maintain their principle places of business, and Minnesota, where Cotswold Homes, LLC and Skywatch Group maintain theirs.  *See* Compl. ¶¶ 2–3.  In each case, a single person was acting on behalf of the paired companies and the same set of facts and circumstances gave rise to their alleged injuries.  *See* Compl. ¶¶ 42–67.

"place of injury is less significant in the case of fraudulent misrepresentations" than "in the case of personal injuries and of injuries to tangible things." *Washkoviak,* 900 A.2d at 181–82. And while the conduct-at-issue factor weighs in favor of the District of Columbia, it does so only moderately "due to a dearth of factual allegations concerning the location of [NAHB's] conduct." *In re APA Assessment Fee Litigation*, 766 F.3d at 54. Given that the third and fourth factors also do not favor any jurisdiction, the Court cannot say that a qualitative weighing of the relevant factors suggests any clear answer. D.C. law therefore applies because "D.C. choice-of-law rules require, in a case where the [Restatement] factors do not point to a clear answer, that we apply D.C. tort law, the law of the forum state." *Wu v. Stomber*, 750 F.3d 944, 949 (D.C. Cir. 2014) (citation omitted); *see also In re APA Assessment Fee Litigation*, 766 F.3d at 54–55.

Having determined that Nevada law applies to Plaintiffs' breach of fiduciary duty claims and D.C. law applies to Plaintiffs' misrepresentation claims, the Court now turns to the merits of the NAHB's motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure.

## B. Legal Standard

The Federal Rules of Civil Procedure require that a complaint contain "a short and plain statement of the claim" in order to give the defendant fair notice of the claim and the grounds upon which it rests. Fed. R. Civ. P. 8(a)(2); *accord Erickson v. Pardus*, 551 U.S. 89, 93 (2007) (*per curiam*). A motion to dismiss under Rule 12(b)(6) does not test a plaintiff's ultimate likelihood of success on the merits; rather, it tests whether a plaintiff has properly stated a claim. *See Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974), *abrogated on other grounds by Harlow v. Fitzgerald*, 457 U.S. 800 (1982). A court considering such a motion presumes that the complaint's factual allegations are true and construes them liberally in the plaintiff's favor. *See, e.g., United States v. Philip Morris, Inc.*, 116 F. Supp. 2d 131, 135 (D.D.C.2000). Nevertheless,

"[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). This means that a plaintiff's factual allegations "must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Twombly*, 550 U.S. at 555–56 (citations omitted). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements," are therefore insufficient to withstand a motion to dismiss. *Iqbal*, 556 U.S. at 678. A court need not accept a plaintiff's legal conclusions as true, *see id.*, nor must a court presume the veracity of the legal conclusions that are couched as factual allegations. *See Twombly*, 550 U.S. at 555.

Furthermore, when a plaintiff alleges fraud or negligent misrepresentation, as the Plaintiffs in this case do, the complaint must "state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b); *see, e.g., Jefferson v. Collins*, 905 F. Supp. 2d 269, 286 (D.D.C. 2012); *3D Global Solutions, Inc. v. MVM, Inc.*, 552 F. Supp. 2d 1, 7–9 (D.D.C. 2008); *Anderson v. USAA Cas. Ins. Co.*, 221 F.R.D. 250, 254 (D.D.C. 2004). This heightened pleading standard requires a complaint to "state the time, place and content of the false misrepresentations, the fact misrepresented and what was retained or given up as a consequence of the fraud." *United States ex rel. Williams v. Martin-Baker Aircraft Co.*, 389 F.3d 1251, 1256 (D.C. Cir. 2004) (internal quotation marks omitted) (quoting *Kowal v. MCI Commc'ns Corp.*, 16 F.3d 1271, 1278 (D.C. Cir. 1994)). The plaintiff must also "identify individuals allegedly involved in the fraud." *United States ex rel. Williams*, 389 F.3d at 1256.

## C. Fraudulent Misrepresentation (Count I)

Count One of Plaintiffs' Complaint asserts common law claims against the NAHB for fraudulent misrepresentation.[8]  Compl. ¶¶ 120–128.  To establish a claim for fraudulent misrepresentation under District of Columbia law, a plaintiff must allege: "(1) that a false representation was made, (2) in reference to a material fact, (3) with knowledge of its falsity, (4) with intent to deceive, and (5) action taken in detrimental reliance upon the representation." *Sibley v. St. Albans Sch.*, 134 A.3d 789, 808–09 (D.C. 2016) (citation omitted).  The NAHB attacks the Plaintiffs' claims on multiple grounds, which the Court addresses in turn.

### 1. False Representations of Material Fact

NAHB's primary argument for dismissing the fraudulent misrepresentation claims is its assertion that Plaintiffs have failed to adequately allege that the NAHB made any false representations of material fact.  *See* Def.'s Mem. at 15–19; Def.'s Reply at 2–5.  "A false representation may be either an affirmative misrepresentation or a failure to disclose a material fact when a duty to disclose that fact has arisen."  *Saucier v. Countrywide Home Loans*, 64 A.3d 428, 438 (D.C. 2013) (quoting *Rothenberg v. Aero Mayflower Transit Co.*, 495 F. Supp. 399, 406 (D.D.C.1980)).  A misrepresentation is "material" if it is "likely to induce a reasonable person to manifest his assent, or if the maker knows that it would be likely to induce the recipient to do so."  *Id.* at 438–39 (quoting *Sarete, Inc. v. 1344 U Street Ltd. P'ship*, 871 A.2d 480, 493 (D.C. 2005) (citing Restatement (Second) of Contracts, § 162 (1981))).  Although the non-disclosure of material information may constitute fraud when there is a duty to disclose, "mere silence does

---

[8] Although the Plaintiffs style their claim as "intentional misrepresentation" claims, the substance of their claims equates to what the District of Columbia calls "fraudulent misrepresentation."  The Court therefore uses the District of Columbia's terminology to reflect more accurately the law being applied.

not constitute fraud unless there is a duty to speak." *Id.* at 439 (quoting *Kapiloff v. Abington Plaza Corp.*, 59 A.2d 516, 517 (D.C. 1948)).

Plaintiffs contend that NAHB made several misrepresentations that suggested to the Plaintiffs that NAHB had "reviewed and approved of the North Star program when in fact it had conducted no such review." Compl. ¶ 125. First, many of the Plaintiffs allege that the NAHB assured them of the "soundness," "integrity[,] and safety of the North Star program" in discussions that they had with NAHB representatives both before and after they applied for the North Star Program.[9] Compl. ¶¶ 50, 51, 60, 85, 106, 116. The NAHB argues, however, that claims premised on these statements must fail because they represent statements of opinions, rather than statements of material facts. Def.'s Mem. at 17; Def.'s Reply at 4 n.3. The Court disagrees.

Typically, "[o]pinions or predictions of future events do not constitute representations of material fact upon which a plaintiff successfully may place dispositive reliance." *Howard v. Riggs Nat'l Bank*, 432 A.2d 701, 706 (D.C. 1981). For example, in *Howard v. Riggs National Bank*, the District of Columbia Court of Appeals agreed with the prevailing case law that, generally, "defendants' statements regarding third parties who ultimately fail to come up to plaintiff's expectations are not actionable in fraud." *Id.* In that case, a customer of Riggs National Bank attempted to bring a fraud action against the bank because a bank employee assured her that a particular contractor's "work product was 'very good . . . very beautiful,' when she should have known that in fact, [the contractor] was not a reputable firm and 'had defrauded numerous individuals throughout the Washington area." *Id.* at 706–07. The Court of Appeals

---

[9] Specifically, Plaintiffs Sierra's Glen, Skywatch, Biltmore, Dostal, and Concord have all alleged receiving some variation of these assurances from the NAHB.

held, however, that the bank could not be liable for fraudulent misrepresentation because there was nothing in the record suggesting that the bank acted in bad faith or knew about any fraudulent behavior. *Id.* at 707. Furthermore, it held that "referrals do not amount to guarantees by the one making the recommendation as to the quality of the work to be performed."[10] *Id.* at 707. The Court of Appeals noted, however, that its predecessor court, the D.C. Circuit, had previously found that representations made by an "agent[ ] of a party to the transaction in question" could rise to the level of a fraudulent misrepresentation if it "evinced a pretense that his representation was true as a matter of fact." *Id.* at 707 (citing *Stein v. Treger*, 182 F.2d 696, 699 (D.C. Cir. 1950)).[11]

 *Stein v. Treger*, 182 F.2d 696 (D.C. Cir. 1950), is one such case. There, the defendants, who were whiskey brokers, contacted a retail liquor dealer and informed him that they were authorized to take whisky orders on behalf of a wholesale firm in Chicago. *See id.* at 697. The retailer asked the brokers whether they had investigated the wholesale firm and they responded that "they had investigated them, and they were financially all right." *Id.* Relying on those statements, among others, the retailer ordered six hundred cases of whisky from the wholesaler through the defendant-brokers and paid a $6,000 deposit. *See id.* Plaintiff, however, only ever received one hundred cases of whisky before the wholesaler encountered financial difficulties and bankruptcy proceedings were initiated. *See id.* Despite the fact that the brokers' assurance that the wholesaler was "financially all right" ostensibly constituted an opinion, the D.C. Circuit

---

 [10] In addition, the court held that, even if the statements were false or misleading, the plaintiff was not "entitled to place dispositive reliance" upon such statements because plaintiff had an adequate opportunity to conduct an independent investigation of the contractor and because this was not information that was held exclusively by the bank. *Id.* at 706–07.

 [11] In *M.A.P. v. Ryan*, 285 A.2d 310, 312 (D.C. 1971), the D.C. Court of Appeals held that decisions by the D.C. Circuit rendered prior to February 1, 1971 "constitute the case law of the District of Columbia" and may only be overruled by the D.C. Court of Appeals *en banc.*

held that the plaintiff "was entitled to rely upon the representations of the broker concerning their principal's financial standing." *Id.* at 699.

Here, the NAHB's alleged representations assuring Plaintiffs of the "soundness," "integrity[,] and safety of the North Star program" without undertaking any investigation of North Star are actionable. This case presents two notable differences from *Howard* that necessitate a different result. First, in *Howard*, the Court found that there was no evidence that the bank acted in bad faith because the bank had a basis for its representation. *See Howard,* 432 A.2d at 707. Here, on the other hand, the Plaintiffs' claims are premised on the notion that the NAHB made representations concerning the relative safety of the loan program *without* any basis whatsoever. *See* Compl. ¶¶ 125–126. Second, unlike *Howard*, the Complaint in this case alleges that the NAHB was not merely referring its members to a program in which it had no personal stake. Indeed, the Complaint alleges that the NAHB and North Star entered into an agreement involving the promotion of the North Star program to NAHB members and prospective members and for which the NAHB would receive a share of the application fees. *See* Compl. ¶¶ 13, 19. The program was then purportedly touted as an "NAHB program," which required NAHB membership to participate, *see* Compl. ¶¶ 17–18, and it is alleged that the "NAHB permitted North Star to indicate on its website that the North Star program was being conducted in conjunction with and under the auspices of the NAHB." Compl. ¶ 20. Thus, as in *Stein*, the Plaintiffs were entitled to rely on the NAHB's statements as implicit representations that the NAHB had some factual basis for its stated opinions because they involved or apparently involved NAHB's "own business or property as to which [it] is bound and must be presumed to know the truth." *Howard*, 432 A.2d at 707 (quoting *Darnell v. Darnell*, 200 F.2d 747, 749 (1952)); *see also Stein*, 182 F.2d at 699 ("Where a party innocently misrepresents a material fact

. . . without reasonable grounds for believing it to be true[] such representation will support an action for fraud.") (citations omitted); Restatement (Second) of Torts § 539(1) (1977) ("A statement of opinion as to facts not disclosed and not otherwise known to the recipient may, if it is reasonable to do so, be interpreted by him as an implied statement . . . that he knows facts sufficient to justify him in forming it.").

The NAHB also argues, however, that claims premised on these statements must fail because such "broad descriptions of alleged misrepresentations" are "insufficient as a matter of law" under Rule 9(b) of the Federal Rules of Civil Procedure. Def.'s Reply at 4; *see also* Def.'s Mem. at 15. The NAHB apparently faults Plaintiffs for failing to quote the precise language of the NAHB's alleged assurances. *See* Def.'s Reply at 5. Although Rule 9(b) does require the Plaintiffs to state the "time, place, and content" of the misstatement, Plaintiffs are not necessarily required to plead with the exactitude that the NAHB suggests. "[T]he requirement of particularity does not abrogate Rule 8, and it should be harmonized with the general directives in subdivisions (a) and (e) of Rule 8 that the pleadings should contain a 'short and plain statement of the claim or defense' and that each averment should be 'simple concise and direct.'" *United States ex rel. Joseph v. Cannon*, 642 F.2d 1373, 1386 (D.C. Cir. 1981) (quoting 2A J. Moore, Federal Practice ¶ 9.03, at 9–28 (2d ed.1980)). The Complaint in this case suggests that the Plaintiffs received multiple assurances concerning the North Star program from various individuals, some of which were made orally, over a period of time. Plaintiffs that relied on these assurances have plead the period over which the representations took place (alleging when discussions with the NAHB began and when the Plaintiffs applied for the program), the method through which they occurred (by phone or by email), specifically identified the various individuals who allegedly made each of the representations, and specified that the nature of the

assurances concerned the "soundness," "integrity[,] and safety of the North Star program." *See* Compl. ¶¶ 49–50, 59–60, 84–85, 103–106, 116. This is sufficient to meet Plaintiffs' burden under Rules 8 and 9 of the Federal Rules of Civil Procedure.[12] *See Daisley v. Riggs Bank, N.A.*, 372 F. Supp. 2d 61, 79 (D.D.C. 2005) (When a "complaint includes the subject matter of the alleged misrepresentation, identifies which defendant allegedly made the misrepresentation, and attributes the misrepresentation to a particular period of time," plaintiff has pled "sufficient information, as contemplated by Rule 9(b), to give defendants 'adequate notice of the specifics' of [Plaintiff]'s fraud claim."); *United States ex rel. Folliard v. CDW Tech. Servs., Inc.*, 722 F. Supp. 2d 20, 31–32 (D.D.C. 2010) (alleging fraud over a period of time is permissible when the "time span of the scheme is not open-ended, and it give[s] the [defendant] sufficient information to allow for preparation of a response.") (internal quotes and citations omitted); *McWilliams Ballard, Inc. v. Broadway Mgmt. Co.*, 636 F. Supp. 2d 1, 6 (D.D.C. 2009) ("[P]laintiff's allegations that misrepresentations were made over the telephone or via e-mail are sufficient to meet the 'place' element."). Although more specificity might be preferable, the Court finds that this level of pleading provides the NAHB with "sufficient information to respond to [Plaintiffs']

---

[12] For similar reasons, the Court finds that the NAHB's argument concerning the sufficiency of Concord's pleading is also without merit. While the NAHB concedes that Concord "alleges that it was told by [Mr.] Vetter that NAHB had vetted the North Star program," the NAHB argues that Concord does not "provide specific information as to when this representation allegedly occurred." Pls.' Mem at 18–19. The Complaint, however, belies that claim. It states that Concord had "contact with [Mr.] Vetter from April to June 2014" and that, during these contacts, Mr. Vetter "assured [Concord] of the integrity and safety of the North Star program." Compl. ¶¶ 113, 116. Because Concord alleges multiple misrepresentations over a period of time that is not open-ended, with sufficient information to allow for preparation of a response, the Court finds that Concord has satisfied its pleading obligation under Rule 9(b). *See U.S. ex rel. Folliard v. CDW Tech. Servs., Inc.*, 722 F. Supp. 2d 20, 31–32 (D.D.C. 2010).

claims."[13] *Firestone v. Firestone*, 76 F.3d 1205, 1211 (D.C. Cir. 1996); *see also U.S. ex rel.*

*Pogue v. Diabetes Treatment Ctrs. of Am., Inc.*, 238 F. Supp. 2d 258, 267 (D.D.C. 2002) ("the

main purpose of Rule 9(b) is to ensure that defendants have notice of the charges against them

adequate to prepare a defense.").

The Court does agree with the NAHB, however, that some of the Plaintiffs have failed to

adequately plead false representations. To start, unlike many of the other Plaintiffs, Plaintiffs

Boomer and Dostal do not allege that they relied upon any specific misstatements made by the

NAHB before applying to the North Star program.[14] Rather, they allege that they relied upon the

"manner and timing of the announcement of the North Star Program" at the NAHB's 2014 Home

Builders Show, which caused them to "reasonably believe[] that the NAHB had diligently

investigated the North Star program prior to allowing it to be offered at the Show." *See* Compl.

¶¶ 34, 98. But an announcement of the North Star program alone is not tantamount to an

affirmative representation of anything that the Plaintiffs may reasonably rely upon. Indeed, the

Court finds that, without more, the announcement amounted to little more than a referral, which,

as explained by the District of Columbia Court of Appeals, is not a guarantee as to the quality of

the referred party. *See Howard*, 432 A.2d at 707. Because Boomer and Dostal do not allege that

the NAHB, at the conference, made any misstatements concerning its due diligence of North Star

or that it made any other material representations for which NAHB lacked the requisite basis,

---

[13] However, as discussed *infra*, because some of these alleged representations were made *after* some of the Plaintiffs applied for the program, the Court finds that those representations may not form the basis of a misrepresentation claim.

[14] Plaintiffs Boomer and Dostal do allege that the NAHB made statements *after* they applied to the North Star program, but as described *infra*, they could not have relied on those statements and therefore they cannot form the basis for their misrepresentation claims.

Plaintiffs Boomer and Dostal have failed to adequately plead their misrepresentation claims.

Accordingly, their claims of fraudulent misrepresentation must be dismissed.

The allegations for Plaintiffs Davis and Bloomfield are similarly deficient. They allege

that they would not have applied for a loan from the North Star program in the absence of the

"assurances," "assistance," and "support" provided by NAHB, but they offer no details about any

alleged NAHB misrepresentations.[15]  Compl.¶¶ 75, 94.  Indeed, they do not allege any time or

place of a misrepresentation nor do they even attempt to describe the nature of the "assurances,"

"assistance," and "support."  Such allegations do not suffice for purposes of pleading fraud under

Rule 9(b).  *See e.g., Carter v. Bank of Am., N.A.*, 888 F. Supp. 2d 1, 14 (D.D.C. 2012) ("plaintiff

has not stated with any particularity the circumstances constituting fraud, as required by Rule

9(b), because she has not provided even approximate dates of when fraudulent statements were

made to her nor the specific nature of the assurances.").  Therefore, Plaintiffs Davis and

---

[15] Bloomfield's and Davis's other allegations of representations do not save their claims. Although Bloomfield alleges that it received certain "information" about North Star, including information that NAHB had "done due diligence on the program," Bloomfield does not allege who provided the information, where it originated, or when it was provided.  Compl. ¶ 90. Indeed, the Complaint raises a significant question about NAHB's involvement in those representations at all because, as Bloomfield alleges, it originally learned about the North Star program—not from the NAHB—but from Plaintiff Biltmore.  Compl. ¶¶ 89, 95.  Similarly, Davis alleges that it first learned of the North Star program from an article in *Builder Magazine*, but does not provide any other information about the article or even identify any purported misrepresentations that it contains.  Compl. ¶ 69.  Thus, neither the allegations about the "information" Bloomfield received nor the article that Davis reviewed can satisfy Rule 9(b)'s heightened pleading necessary to support a claim for fraudulent misrepresentation.  *See United States ex rel. Keaveney v. SRA Int'l, Inc.*, No. 13-855, 2016 WL 6988787, at *11 (D.D.C. Nov. 29, 2016) (claims failed under Rule 9(b) when "[r]elators [did] not allege when the purported misrepresentations were made, who made the misrepresentation, and whether [defendants] were involved.").  Furthermore, while Davis alleges that it engaged in telephone or email communications with Mr. Vetter in early 2014, it does not allege any representations that Mr. Vetter made pertaining to North Star, let alone a false representation of material fact.  *See* Compl. ¶¶ 70–73.

Bloomfield have failed to state claims for fraudulent misrepresentation for which relief can be granted.

Finally, to the extent that the Plaintiffs also allege fraudulent misrepresentation as a result of a material omission, that claim too must fail. "[M]ere silence does not constitute fraud unless there is a duty to speak." *Saucier v. Countrywide Home Loans*, 64 A.3d 428, 439 (D.C. 2013) (quoting *Kapiloff v. Abington Plaza Corp.*, 59 A.2d 516, 517 (D.C.1948)). Plaintiffs allege that the NAHB owed them fiduciary duties by virtue of their membership in the NAHB organization. *See* Pls.' Opp'n at 19–20. However, as discussed *infra*, there is no basis for the existence of such a fiduciary relationship under the law. Thus, because the Plaintiffs have not identified any duty owed to them by the NAHB, there can be no liability for the NAHB's failure to speak.

### 2. Intent to Deceive

The NAHB also argues that the Plaintiffs claims should be dismissed because they have failed to allege that the NAHB had the requisite intent to deceive. *See* Def.'s Mem. at 19–20. The NAHB argues that Plaintiffs' claims fail to allege fraudulent intent because they do not allege that the NAHB was aware of North Star's fraudulent scheme. Def.'s Mem. at 19–20. But, as Plaintiffs point out, knowledge of North Star's fraudulent scheme is not necessary for the Plaintiffs to plead intent. Pls.' Opp'n at 19. Indeed, intent to deceive can be inferred "from the fact that [a] defendant made an affirmative statement that he knew to be false." *Djourabchi v. Self*, 571 F. Supp. 2d 41, 50 (D.D.C. 2008) (citing *Nader v. Allegheny Airlines, Inc.*, 512 F.2d 527, 547 (D.C. Cir. 1975)). And although Rule 9(b) of the Federal Rules requires heightened pleading when alleging "fraud or mistake," "[m]alice, intent, knowledge and other conditions of a person's mind may be alleged generally." Fed. R. Civ. P. 9(b).

Here, the Complaint adequately alleges that the NAHB intended to deceive the Plaintiffs when it assured them that the North Star program was safe, knowing it had no basis for that claim. The Plaintiffs fairly allege that the NAHB's assurances concerning the loan program suggested "that the NAHB had reviewed and approved of the North Star program when in fact it had conducted no such review" and that the NAHB allegedly "knew or should have known that it had not conducted [such an] examination." Compl. ¶¶ 125–126. Plaintiffs allege further that the NAHB made these representations because it sought to induce its members to apply for North Star loans "to receive remuneration through increased membership dues and payments though an affinity program." *See* Compl. ¶¶ 18–19, 124. Because Plaintiffs allege that the NAHB was aware that it had no basis for the claims that it represented, there are sufficient grounds to infer the NAHB's intent to deceive. *See Djourabchi v. Self*, 571 F. Supp. 2d 41, 50–51 (D.D.C. 2008) (defendant's statement "that he was a licensed home improvement contractor in the District of Columbia; a statement he knew to be false" was sufficient to "imply the defendant's intent to deceive the plaintiffs."); *Stein*, 182 F.2d at 699 ("Where a party innocently misrepresents a material fact . . . without reasonable grounds for believing it to be true[] such representation will support an action for fraud.").

### 3. Reliance

In addition to their other arguments, the NAHB argues that Plaintiffs Biltmore, Boomer, and Dostal have not sufficiently alleged reliance because the purported misrepresentations that they relied upon occurred *after* they applied for the loan program. Def.'s Mem. at 17–18. The Court agrees. A plaintiff cannot premise a claim of fraudulent misrepresentation on statements that were made after his or her alleged reliance. *See Sundberg v. TTR Realty, LLC*, 109 A.3d 1123, 1128, 1131–33 (D.C. 2015) (agreeing with trial court that plaintiffs "failed to show

detrimental reliance because the alleged misrepresentations and omissions occurred after the contract [for the purchase of land] was signed"); *accord Baker v. Gurfein*, 744 F. Supp. 2d 311, 318–19 (D.D.C. 2010) ("the purported misrepresentation was made 'several days after the conversion of the' jewelry and thus, Baker did not lose her proprietary interest in the jewelry 'as a consequence' of the misrepresentation.") (internal citations omitted). In this case, Plaintiff Biltmore does not specifically allege that NAHB made any representation about the loan program prior to applying for the program and submitting payment. *See* Compl. ¶¶ 79–83. Biltmore alleges, however, that the NAHB eventually assured it of the "integrity and safety of the North Star program," but that it did so in "the months *following* the application." Compl. ¶¶ 84–85 (emphasis added). Similarly, and as discussed above, Plaintiffs Boomer and Dostal allege that they both applied to the North Star program after attending NAHB's 2014 Home Building Show, but neither alleges any misstatements that they relied upon when they did so. Although they also allege that the NAHB told them that it was "well informed about the North Star program and that the program was safe," these representations were made nearly a year after Boomer and Dostal applied. *See* Compl. ¶¶ 22, 103. Because the NAHB's purported statements occurred after Plaintiffs Biltmore, Boomer, and Dostal applied for the North Star program, they have failed to plead any actions that they took in detrimental reliance upon the NAHB's representations.[16] *See Sundberg v. TTR Realty, LLC*, 109 A.3d 1123, 1128, 1131–33 (D.C. 2015). Accordingly, their claims for fraudulent misrepresentation must be dismissed.

---

[16] While Dostal does allege that these statements were made "prior to the time Dostal paid additional money for North Star loans," it does not allege that it relied on those statements in paying the additional money nor does it specify the amount of money it paid. Compl. ¶ 103. The Court cannot reasonably infer reliance when Dostal had previously submitted multiple applications and paid tens of thousands of dollars in the absence of those assurances. Therefore, the allegations still fail under Rule 9(b).

#### 4. Proximate Causation

Finally, the NAHB urges the Court to dismiss the Plaintiffs' fraudulent misrepresentation claims because the Complaint fails to allege proximate causation. Def.'s Mem. at 24–25. Under D.C. law, a plaintiff seeking recovery for fraudulent misrepresentation must prove "that the defendant's challenged conduct proximately caused [the] plaintiff's injury." *Steele v. Isikoff*, 130 F. Supp. 2d 23, 34 (D.D.C. 2000) (citing *Thompson v. Shoe World, Inc.*, 569 A.2d 187, 189 (D.C. 1990)). A defendant's challenged conduct is the proximate cause of a plaintiff's injury "only if 'the injury is the natural and probable consequence of the negligence or wrongful act and ought to [have been] foreseen in light of the circumstances.'" *Steele*, 130 F. Supp. 2d at 34 (quoting *Sanders v. Wright*, 642 A.2d 847, 849 (D.C. 1994)).

The NAHB argues that the fraudulent misrepresentation claims should be dismissed for all Plaintiffs because their alleged harm was caused by North Star's criminal scheme, which NAHB is not alleged to have known about and could not have been foreseeable to the NAHB. Def.'s Mem. at 24–25. The Court is not persuaded. The fact that the NAHB is not alleged to have known about the fraudulent scheme is beside the point; Plaintiffs' claim is that the NAHB should not have suggested that the North Star program was reputable or safe when the NAHB had no basis for those representations. The harm that Plaintiffs allegedly suffered was both a natural and foreseeable consequence of those actions. Indeed, it was foreseeable that the Plaintiffs might rely on representations giving them comfort in this new, but attractive loan program, particularly when "conventional financing at reasonable rates was generally not available for home building projects costing up to $10 million." Compl. ¶¶ 121–122. Furthermore, the NAHB should have recognized the risk that members who might rely on those assurances could be harmed because it is reasonably foreseeable that un-vetted companies may

be unqualified or unscrupulous. *See e.g.*, *Ret. Program for Emps. of the Town of Fairfield v. NEPC, LLC*, 642 F. Supp. 2d 92, 96 (D. Conn. 2009) (proximate causation adequately alleged when plaintiffs claimed that if "KPMG had acted in accordance with its duty as an auditor . . . it would have uncovered Madoff's fraud and prevented the future financial losses by the Plans" and that plaintiffs "suffered financial damages as a result."). Thus, the Plaintiffs have sufficiently alleged proximate causation.

*     *     *

Because Plaintiffs Boomer, Davis, Bloomfield, Biltmore, and Dostal have failed to adequately allege their claims of fraudulent misrepresentation in accordance with Rule 9(b)'s particularity requirement, the Court dismisses their claims without prejudice, and grants them leave to amend their Complaint to cure deficiencies. *See Firestone v. Firestone*, 76, F.3d 1205, 1209 (D.C. Cir. 1996) ("Failure to plead fraud with particularity . . . does not support a dismissal with prejudice. To the contrary, leave to amend is 'almost always' allowed to cure deficiencies in pleading fraud.").

### D.  Negligent Misrepresentation (Count II)

In addition to their fraudulent misrepresentation claims, Plaintiffs also allege negligent misrepresentation claims against the NAHB. Compl. at 22. To state a claim for negligent misrepresentation under D.C. law, a plaintiff must allege "(1) that [the defendant] made a false statement or omitted a fact that he had a duty to disclose; (2) that it involved a material issue; and (3) that [the plaintiff] reasonably relied upon the false statement or omission to his detriment." *Kumar v. D.C. Water & Sewer Auth.*, 25 A.3d 9, 15 n.9 (D.C. 2011) (quoting *Redmond v. State Farm Ins. Co.*, 728 A.2d 1202, 1207 (D.C. 1999)). Thus, "the elements of a negligent misrepresentation claim are the same as those of a fraudulent misrepresentation claim, except a

negligent misrepresentation claim does not include the state of mind requirements of fraud." *Regan v. Spicer HB, LLC*, 134 F. Supp. 3d 21, 38 (D.D.C. 2015). Furthermore, "like claims for fraudulent misrepresentation, Rule 9(b)'s particularity requirements apply to claims for negligent misrepresentation." *Jacobson v. Hofgard*, 168 F. Supp. 3d 187, 206 (D.D.C. 2016) (citing *Jefferson v. Collins*, 905 F. Supp. 2d 269, 286 (D.D.C. 2012)).

In this case, Plaintiffs' claims of negligent misrepresentation rest on the same statements and omissions as their fraudulent misrepresentation claims. *See* Pls.' Opp'n at 18. Because of the parallel nature of the claims, Plaintiffs' negligent misrepresentation claims survive to the same extent—and for the same reasons—as their fraudulent misrepresentation claims. Thus, the Court dismisses the negligent misrepresentation claims as to Plaintiffs Boomer, Davis, Bloomfield, Biltmore, and Dostal without prejudice.

### E. Breach of Fiduciary Duty (Count III)

Finally, Plaintiffs assert a claim against the NAHB for breach of fiduciary duties. Compl. at 22–23. To state a claim for breach of fiduciary duty under Nevada law, a plaintiff must allege facts sufficient to show "(1) the existence of a fiduciary duty; (2) breach of that duty; and (3) the breach proximately caused the damages." *Klein v. Freedom Strategic Partners, LLC*, 595 F. Supp. 2d 1152, 1162 (D. Nev. 2009). Plaintiffs allege that the NAHB owed them fiduciary duties as members of NAHB and that NAHB breached those duties, injuring Plaintiffs, when it "assured [loan] applicants that North Star was financially sound and could be trusted when it had done nothing to confirm such accolades." Pls.' Opp'n at 20. The NAHB argues, however, that Plaintiffs' claim for breach of fiduciary duty must be dismissed because Plaintiffs have failed to allege facts demonstrating any fiduciary relationship between NAHB and Plaintiffs. *See* Def.'s Mem. at 20–23. For the foregoing reasons, the Court finds that there was no fiduciary

relationship between the parties and, accordingly, dismisses Plaintiffs' breach of fiduciary duty claims.

"[A] 'fiduciary relation exists between two persons when one of them is under a duty to act for or to give advice for the benefit of another upon matters within the scope of the relation.'" *Stalk v. Mushkin*, 199 P.3d 838, 843 (Nev. 2009) (quoting Restatement (Second) of Torts § 874 cmt. a (1979)). "The essence of a fiduciary or confidential relationship is that the parties do not deal on equal terms, since the person in whom trust and confidence is reposed and who accepts that trust and confidence is in a superior position to exert unique influence over the dependent party." *Hoopes v. Hammargren*, 725 P.2d 238, 242 (Nev. 1986).

The Nevada Supreme Court has held that certain relationships give rise to fiduciary duties as a matter of law. *See, e.g.*, *Powers v. United Servs. Auto. Ass'n*, 979 P.2d 1286, 1288 (Nev. 1999) (insurers and insured); *Cook v. Cook*, 912 P.2d 264, 266 (Nev. 1996) (attorney and client); *id.* (spouses); *Fick v. Fick*, 851 P.2d 445, 449–50 (Nev. 1993) (fiancés); *Leavitt v. Leisure Sports Inc.*, 734 P.2d 1221, 1224 (Nev. 1987) (corporate officers or directors and corporation). Beyond these categories, Nevada law recognizes duties owed in "confidential relationships," where "one party gains the confidence of the other and purports to act or advise with the other's interests in mind." *Perry v. Jordan*, 900 P.2d 335, 338 (Nev. 1995) (per curiam) (internal quotation marks and citation omitted). A confidential relationship "may arise by reason of kinship or professional, business, or social relationships between the parties." *Id.* at 337. "When a confidential relationship exists, the person in whom the special trust is placed owes a duty to the other party similar to the duty of a fiduciary, requiring the person to act in good faith and with due regard to the interests of the other party." *Id.* To prove the existence of a confidential relationship, a party must show that (1) "the conditions would cause a reasonable

person to impart special confidence" and (2) the trusted party reasonably should have known of that confidence. *Mackintosh v. Cal. Fed. Sav. & Loan Ass'n*, 935 P.2d 1154, 1160 (Nev. 1997) (per curiam).

Here, the Court need only consider the existence of a categorical fiduciary relationship because Plaintiffs do nothing to allege circumstances that might give rise to an otherwise confidential relationship. Plaintiffs do not allege that the NAHB ever made them promises, that the NAHB ever had—or that Plaintiffs ever sought—any special expertise that Plaintiffs lacked, that the NAHB ever held property in trust for their benefit, nor do they allege any other facts from which to infer that the Plaintiffs "imparted special confidence" into the NAHB or that the NAHB "should have known of that confidence."[17] Indeed, Plaintiffs' sole allegation concerning their relationship with the NAHB is their claim that the NAHB is a nonprofit, trade association that provides its members, including Plaintiffs, with various products and services in exchange for a membership fee. Thus, the only question for this Court is whether a fiduciary relationship could have arisen between the NAHB and Plaintiffs simply by virtue of the Plaintiffs' membership in the organization. However, this is a question that the Supreme Court of Nevada has never squarely addressed. Thus, this Court must choose the rule that it believes the Supreme Court of Nevada is "likely to adopt in the future." *Hull v. Eaton Corp.*, 825 F.2d 448, 453 (D.C. Cir. 1987) (citing 19 C. Wright, A. Miller & Cooper, *Federal Practice and Procedure* § 4507,

---

[17] Although Plaintiffs have attempted to allege new facts in their opposition memorandum suggesting why members may have relied on assurances from NAHB, *see* Pls.' Opp'n at 17–18, a court reviewing a motion to dismiss, "need not accept additional allegations inserted in a document, such as an opposition memorandum, that is not a complaint or amendment to the complaint." *Sheller-Paire v. Gray*, 888 F. Supp. 2d 34, 39 n.3 (D.D.C. 2012) (citation omitted). Accordingly, this Court will consider only those allegations that appear in the Complaint.

103 (1982)); *see also Boley v. Atl. Monthly Grp.*, 950 F. Supp. 2d 249, 255 (D.D.C. 2013) ("Where, as here, 'the substantive law of the forum state is uncertain or ambiguous, the job of the federal courts is carefully to predict how the highest court of the forum state would resolve the uncertainty or ambiguity.'") (quoting *Travelers Ins. Co. v. 633 Third Assocs.*, 14 F.3d 114, 119 (2d Cir. 1994)).

Plaintiffs argue that "officers and directors of a corporation owe a fiduciary duty to the corporation and its shareholders" and that this principle "applies to membership organizations as well." Pls.' Opp'n at 19–20. The problem with Plaintiffs' argument, however, is that they are bringing claims against NAHB—not NAHB's officers or directors. While it is certainly true and uncontroversial that officers and directors owe fiduciary duties to their respective organizations and to their members or shareholders, *see e.g.*, *Shoen v. SAC Holding Corp.*, 122 Nev. 621, 632, 137 P.3d 1171, 1178 (2006); *Leavitt v. Leisure Sports Inc.*, 734 P.2d 1221, 1224 (Nev. 1987), it is widely understood that the organizations themselves *do not* owe such duties, *see e.g. Radol v. Thomas*, 772 F.2d 244, 258 (6th Cir. 1985) ("There is not, and could not conceptually be any authority that a corporation as an entity has a fiduciary duty to its shareholders."). Indeed, numerous courts from across the country have rejected that proposition. *See e.g., id.*; *Burcham v. Unison Bancorp, Inc.*, 77 P.3d 130, 146 (Kan. 2003) (rejecting argument that "a corporation owes a fiduciary duty to its stockholders"); *Arnold v. Soc'y for Sav. Bancorp, Inc.*, 678 A.2d 533, 539 (Del. 1996) (same); *ULQ, LLC v. Meder*, 666 S.E.2d 713, 718 (Ga. Ct. App. 2008) ("[A] limited liability company owes no fiduciary duty to its members, either directly or vicariously."); *Ballard v. 1400 Willow Council of Co-Owners, Inc.*, 430 S.W.3d 229, 241 (Ky. 2013) ("[W]e cannot say that the [nonprofit corporation] has a fiduciary duty to the individual owners . . . . Rather, we believe it is the officers and directors that have a fiduciary duty, and that duty is to

the nonprofit corporation."); *Oakland Raiders v. Nat'l Football League*, 32 Cal. Rptr. 3d 266, 278 (2005) (rejecting argument that "unincorporated association and/or its leaders stand in a fiduciary relationship with respect to its members under all circumstances."); *Hussey v. Operating Engineers Local Union No. 3*, 42 Cal. Rptr. 2d 389, 394 (1995) (rejecting argument that "union owes a fiduciary duty to its members"). The Plaintiffs have not identified a single authority anywhere in the country suggesting that nonprofit trade associations, as opposed to their officers or directors, owe fiduciary duties to their members.[18] The Plaintiffs have also not advanced any argument as to why such a relationship might exist.

Upon consideration of the relationship at issue and the current state of the law in Nevada, the Court discerns no persuasive reason why nonprofit trade associations should be categorically held to occupy positions of special trust with respect to their members. Indeed, the Court has identified no authority in Nevada that contemplates the existence of such a relationship nor any authority or line of reasoning indicating that Nevada law is likely to recognize this relationship in the future. Therefore, the Court is unable to find that the Supreme Court of Nevada is likely to recognize a fiduciary duty owed by nonprofit trade associations to their members. The Court also finds that acknowledgement of a fiduciary relationship between nonprofit trade associations and its members would be particularly inappropriate here because it would "represent a significant change to the existing matrix of duties" governing the internal affairs of Nevada nonprofit trade associations, *see Arnold*, 678 A.2d at 539, and would "expand state law in ways not foreshadowed by state precedent," *Philadelphia v. Beretta U.S.A. Corp.*, 277 F.3d 415, 421

---

[18] The only case cited by Plaintiffs in support of their argument, *Wisconsin Avenue Associates, Inc. v. 2720 Wisconsin Avenue Cooperative Association*, 441 A.2d 956 (D.C. 1982), is inapposite. Indeed, that case involved the fiduciary duties owed by developers and directors of a cooperative housing association, *i.e.* agents of the cooperative, to the cooperative and its members—not the duties owed by the organization to its members. *Id.* at 963.

(3d Cir. 2002). *See also Torres v. Goodyear Tire & Rubber Co.*, 867 F.2d 1234, 1238 (9th Cir. 1989) (Federal courts sitting in diversity should "hesitate prematurely to extend the law . . . in the absence of an indication from the [state] courts or the [state] legislature that such an extension would be desirable."); *Combs v. Int'l Ins. Co.*, 354 F.3d 568, 577–78 (6th Cir. 2004) ("Federal courts sitting in a diversity case are in a particularly poor position . . . to endorse [a] fundamental policy innovation. . . . Absent some authoritative signal from the legislature or the courts of [the state], we see no basis for even considering the pros and cons of innovative theories") (internal quotes omitted). Because the Court finds that the Plaintiffs have failed to allege the existence of a fiduciary relationship with the NAHB, Plaintiffs' breach of fiduciary duty claims must be dismissed.[19]

## IV. CONCLUSION

For the foregoing reasons, Defendant's Motion to Dismiss is **GRANTED IN PART AND DENIED IN PART**. An order consistent with this Memorandum Opinion is separately and contemporaneously issued.

Dated: June 16, 2017                                 RUDOLPH CONTRERAS
                                                        United States District Judge

---

[19] Even if the Court did recognize a fiduciary duty owed by nonprofit trade associations to its members, the claims asserted by Sierra's Glen and Skywatch would still fail because, not only do they not allege any confidential relationship, they do not allege that they were ever members of the NAHB. *See* Compl. ¶¶ 42–67.