# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | | | |
|---|---|---|---|
| BOOMER DEVELOPMENT, LLC, *et al.*, | : | | |
| | : | | |
| Plaintiffs, | : | Civil Action No.: | 16-2225 (RC) |
| | : | | |
| v. | : | Re Document No.: | 38, 40 |
| | : | | |
| NATIONAL ASSOCIATION OF HOME | : | | |
| BUILDERS OF THE UNITED STATES, | : | | |
| | : | | |
| Defendant. | : | | |

## MEMORANDUM OPINION

GRANTING IN PART AND DENYING IN PART DEFENDANT'S PARTIAL MOTION TO DISMISS
AMENDED COMPLAINT [38]; DENYING DEFENDANT'S MOTION TO SEVER CLAIMS AND
PARTIES [40]

## I. INTRODUCTION

Beginning in 2014, the National Association of Home Builders of the United States

("NAHB"), allegedly began promoting a loan program offered by North Star Finance LLC

("North Star") to NAHB members and prospective members. Am. Compl. ¶¶ 12–13, ECF No.

37. Plaintiffs, who were members or prospective members of NAHB, allege that they applied to

the loan program and paid application fees to North Star based on assurances from NAHB

representatives that the NAHB had conducted appropriate due diligence on North Star and that

the program was safe and reputable.[1] Ultimately, however, North Star's financing never

materialized because that program was, in reality, a fraudulent investment scheme carried out by

---

[1] The ten Plaintiffs that have brought this action are Boomer Development, LLC
("Boomer"), Sierra's Glen Partners II and Sierra's Glen Partners V, LP (collectively "Sierra's
Glen"), Cotswold Homes, LLC and Skywatch Group (collectively "Skywatch"), Davis
Contracting and Development, Inc. ("Davis"), Biltmore Development LLC ("Biltmore"),
Bloomfield Construction, Inc. ("Bloomfield"), Thomas Dostal Developers, Inc. ("Dostal"), and
Concord Development Co., LLC ("Concord"). Am. Compl. ¶¶ 1–8.

North Star. Plaintiffs now allege that the NAHB should be held responsible for their losses because they claim that the NAHB's assertions that it had reviewed the program were, in fact, false. This matter now comes before the Court on two motions. First, Defendant has filed a partial motion to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. *See generally* Def.'s Partial Mot. to Dismiss Am. Compl. ("Def.'s Mot. Dismiss"), ECF No. 38. Second, Defendant has moved to sever the claims and parties of this suit pursuant to Rule 21. Def.'s Mot. Sever Claims and Parties ("Def.'s Mot. Sever"), ECF No. 40. For the reasons stated below, the Court grants the motion to dismiss with respect to Plaintiff Bloomfield, but denies the motion with respect to the other Plaintiffs. The Court also denies the motion to sever the claims and parties.

## II. FACTUAL BACKGROUND[2]

In late 2013 and early 2014, the NAHB entered into an agreement with North Star to offer a financing program for current and prospective members of the NAHB. Am. Compl. ¶ 12. Under the program, members could obtain non-recourse debt financing for projects up to $10 million at interests rates that were at or below available market rates and included other favorable terms. Am. Compl. ¶ 12.

The NAHB first announced the North Star program in February 2014 at the NAHB's annual Home Builders Show in Las Vegas, Nevada. *See* Am. Compl. ¶¶ 13–14. The program was introduced at various points throughout the Show by prominent NAHB representatives. *See* Am. Compl. ¶ 15. Indeed, among others, the program was touted by Rick Judson, the Chairman of NAHB's Board of Directors, and by Thomas Vetter, an NAHB Executive Board Member.

---

[2] At the motion to dismiss stage, the Court accepts the plaintiff's factual allegations as true. *See, e.g., United States v. Philip Morris, Inc.*, 116 F. Supp. 2d 131, 135 (D.D.C. 2000).

*See* Am. Compl. ¶ 15.  During the presentations, attendees were told that the program was an

NAHB program available only to NAHB members and that, if they were interested in applying,

they should provide their contact information to NAHB personnel.  *See* Am. Compl. ¶¶ 16–17.

Attendees were also advised that NAHB and North Star intended to enter into an "affinity"

program whereby the NAHB would receive a share of the application fees that loan applicants

paid to North Star.  *See* Am. Compl. at ¶ 18.

      Following the conference, the NAHB continued to promote and disseminate information

about the North Star program to its members and others.  The NAHB provided information about

the program to its state and local affiliates and recommended that they refer any interested

persons to NAHB for additional details.  *See* Am. Compl. ¶ 23.  When contacted, the NAHB

provided information about the program, instructed interested persons on how to contact North

Star to apply, and also provided certain assurances.  *See* Am. Compl. ¶ 25.  Specifically,

Plaintiffs allege that senior NAHB officers and directors, including Mr. Judson, Mr. Vetter,

Rebecca Froass, a Director for NAHB's Financial Institutions and Capital Markets, and Richard

Krump, legal counsel to NAHB, variously represented to them that NAHB had vetted North Star

and considered both it and the loan program to be sound.  *See* Am. Compl. ¶¶ 35, 45, 48, 51, 55,

58, 69, 72, 83, 91, 103, 121–23, 138, 153–54, 174.  Nevertheless, Plaintiffs allege that, despite

the NAHB's general promotion of the North Star program and its assurances concerning the

integrity of the program, the NAHB never in fact took any reasonable steps to independently

confirm the qualifications of North Star's operators, the accuracy of North Star's representations

about the program, or the merits of the program generally.  Am. Compl. ¶ 27.

      The Plaintiffs in this case allege that they applied for the North Star program and paid

substantial fees to North Star and an associated firm, called Capital Source Funding ("Capital

Source"), in reliance on NAHB's various representations. *See* Am. Compl. ¶¶ 42, 46, 70–71, 81, 86, 88, 105–06, 126, 132, 142–43, 146, 157, 161, 167, 178, 180, 190–91. But the North Star financing never materialized. *See* Am. Compl. ¶¶ 59–60, 78–79, 94–95, 112–13, 133–34, 148–49, 171–72, 181–82. In May 2015, it was revealed that the North Star program was, in reality, a fraudulent investment scheme when the Securities and Exchange Commission filed a federal lawsuit against North Star and others. Am. Compl. ¶ 30.

On June 21, 2016, Plaintiffs commenced this suit against the NAHB in the Pennsylvania Court of Common Pleas, alleging, among other things, claims for fraudulent misrepresentation and negligent misrepresentation. The NAHB subsequently removed the action to the United States District Court for the Middle District of Pennsylvania and filed a motion to dismiss the claims pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. The case was later transferred to this Court and this Court then dismissed the claims of several Plaintiffs, but granted them leave to amend. On July 28, 2017, Plaintiffs filed an Amended Complaint in which they reasserted their misrepresentation claims. The NAHB has now filed a motion to dismiss the claims asserted by Plaintiffs Bloomfield, Boomer, Davis, and Biltmore under Rule 12(b)(6). In addition, the NAHB requests that this Court sever the claims of all Plaintiffs and have them each proceed in separate actions.

## III.  ANALYSIS

### A.  Partial Motion to Dismiss

The Court first addresses NAHB's partial motion to dismiss. The Federal Rules of Civil Procedure require that a complaint contain "a short and plain statement of the claim" in order to give the defendant fair notice of the claim and the grounds upon which it rests. Fed. R. Civ. P. 8(a)(2); *accord Erickson v. Pardus*, 551 U.S. 89, 93 (2007) (*per curiam*). A motion to dismiss

under Rule 12(b)(6) does not test a plaintiff's ultimate likelihood of success on the merits; rather, it tests whether a plaintiff has properly stated a claim. *See Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974), *abrogated on other grounds by Harlow v. Fitzgerald*, 457 U.S. 800 (1982). A court considering such a motion presumes that the complaint's factual allegations are true and construes them liberally in the plaintiff's favor. *See, e.g., United States v. Philip Morris, Inc.*, 116 F. Supp. 2d 131, 135 (D.D.C. 2000). Nevertheless, "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). This means that a plaintiff's factual allegations "must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Twombly*, 550 U.S. at 555–56 (citations omitted). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements," are therefore insufficient to withstand a motion to dismiss. *Iqbal*, 556 U.S. at 678. A court need not accept a plaintiff's legal conclusions as true, *see id.*, nor must a court presume the veracity of the legal conclusions that are couched as factual allegations. *See Twombly*, 550 U.S. at 555.

In this case, each of the Plaintiffs asserts two claims. First Plaintiffs assert common law claims of fraudulent misrepresentation. *See* Am. Compl. ¶¶ 183–191. To establish a claim for fraudulent misrepresentation under District of Columbia law, a plaintiff must allege: "(1) that a false representation was made, (2) in reference to a material fact, (3) with knowledge of its falsity, (4) with intent to deceive, and (5) action taken in detrimental reliance upon the representation." *Sibley v. St. Albans Sch.*, 134 A.3d 789, 808–09 (D.C. 2016) (citation omitted). Second, Plaintiffs allege negligent misrepresentation claims. *See* Am. Compl. ¶¶ 192–196.

"[T]he elements of a negligent misrepresentation claim are the same as those of a fraudulent misrepresentation claim, except a negligent misrepresentation claim does not include the state of mind requirements of fraud." *Regan v. Spicer HB, LLC*, 134 F. Supp. 3d 21, 38 (D.D.C. 2015). Because each of the Plaintiffs' claims involves fraud, they must all satisfy the heightened pleading burden of Rule 9(b). *See Jacobson v. Hofgard*, 168 F. Supp. 3d 187, 206 (D.D.C. 2016) ("[L]ike claims for fraudulent misrepresentation, Rule 9(b)'s particularity requirements apply to claims for negligent misrepresentation." (citing *Jefferson v. Collins*, 905 F. Supp. 2d 269, 286 (D.D.C. 2012))).

In cases involving fraud, Rule 9(b) requires that a complaint "state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b); *see, e.g., Jefferson v. Collins*, 905 F. Supp. 2d 269, 282 (D.D.C. 2012); *3D Global Solutions, Inc. v. MVM, Inc.*, 552 F. Supp. 2d 1, 7–9 (D.D.C. 2008); *Anderson v. USAA Cas. Ins. Co.*, 221 F.R.D. 250, 254 (D.D.C. 2004). The D.C. Circuit has generally advised that this requires a complaint to "state the time, place and content of the false misrepresentations, the fact misrepresented and what was retained or given up as a consequence of the fraud." *United States ex rel. Williams v. Martin-Baker Aircraft Co.*, 389 F.3d 1251, 1256 (D.C. Cir. 2004) (internal quotation marks omitted) (quoting *Kowal v. MCI Commc'ns Corp.*, 16 F.3d 1271, 1278 (D.C. Cir. 1994)). In addition, a plaintiff must ordinarily "identify individuals allegedly involved in the fraud." *United States ex rel. Williams*, 389 F.3d at 1256.

Nevertheless, Rule 9(b)'s particularity requirement does not abrogate Rule 8's general requirements that a pleading contain a "short and plain statement of the claim," and that each averment be "simple, concise, and direct." *United States ex rel. Joseph v. Cannon*, 642 F.2d 1373, 1386 (D.C. Cir. 1981). Rule 9(b) simply requires the pleader to provide a higher degree of

notice by adequately alleging all of the requisite elements for the cause of action invoked. *Alicke v. MCI Commc'ns Corp.*, 111 F.3d 909, 912 (D.C. Cir. 1997). The Court must remain cognizant that "the point of Rule 9(b) is to ensure that there is sufficient substance to the allegations to both afford the defendant the opportunity to prepare a response and to warrant further judicial process." *United States ex rel. Heath v. AT & T, Inc.*, 791 F.3d 112, 125 (D.C. Cir. 2015). Accordingly, "Rule 9(b) does not inflexibly dictate adherence to a preordained checklist of 'must have' allegations." *Id.*; *see also United States ex rel. Head v. Kane Co.*, 798 F. Supp. 2d 186, 193 (D.D.C. 2011) (Courts "must not rigidly apply the requirements of Rule 9(b), but rather should analyze the Rule on a case by case basis.").

The NAHB argues that the claims lodged by Plaintiffs Bloomfield, Boomer, Davis, and Biltmore should all be dismissed because they have each failed to adequately plead certain specific factual matters required by Rule 9(b). The Court considers each of those Plaintiff's claims in turn and finds that only those claims asserted by Plaintiff Bloomfield fail to meet the pleading burden imposed by Rule 9(b).

### 1. Bloomfield

The Court first considers the new allegations by Plaintiff Bloomfield. In this Court's prior opinion, the Court found that Bloomfield's allegations failed to satisfy Rule 9(b)'s particularity requirement because it failed to allege the time, place, or nature of any supposed misrepresentations made by NAHB. The Court observed that, although Bloomfield alleged that it had received certain "information" about North Star, including information that the NAHB had "done due diligence on the program," Bloomfield did not allege who provided the information, where it originated, or when it was provided. Indeed, the Court found that there was significant question about NAHB's involvement in those representations at all because Bloomfield had

alleged that it learned about the program from Plaintiff Biltmore—not NAHB. Bloomfield has since altered and refined its allegations, providing new and additional details.

According to the Amended Complaint, Bloomfield learned about the North Star program, not from Biltmore, but from a "real estate financial advisor" who was also "acting in a similar capacity for Biltmore Development." Am. Compl. ¶ 135. In order to advise Biltmore and Bloomfield about the program, the advisor communicated with Tom Vetter at the NAHB. Am. Compl. ¶ 137. Mr. Vetter allegedly represented to the advisor that he and others at NAHB had "spent many months working to ensure that the North Star program was legitimate and trustworthy" and that the program "had been checked out by legal counsel for NAHB." Am. Compl. ¶ 138. This, according to the Amended Complaint, was false. *See* Am. Compl. ¶ 188. The advisor then conveyed this information to Bloomfield who, based on these representations, filed a loan application with North Star in March of 2014 along with a payment of $30,000. Am. Compl. ¶¶ 139, 142. Bloomfield also alleged that "[b]etween March 12, and May 6, 2014 and thereafter, [Bloomfield], along with [its] advisor, had contacts with Rick Judson, who added assurances that the North Star program was safe." Am. Compl. ¶ 144. Bloomfield allegedly relied on these additional assurances when it decided to submit a second loan application in May 2014 and pay an additional $20,000. Am. Compl. ¶¶ 143, 145.

The NAHB argues that these new allegations still fail to state a claim for fraudulent or negligent misrepresentation. To start, NAHB argues that the claims must be dismissed because the initial representations upon which Bloomfield allegedly relied came from the "financial advisor," rather than NAHB. *See* Def.'s Mot. Dismiss at 7–8; Def.'s Reply at 1–2. This is only half true. While it is correct that Bloomfield allegedly relied on the representations made by the advisor, the Amended Complaint makes clear that the advisor was merely relaying the

misrepresentations made by an NAHB representative, Mr. Vetter.  *See* Am. Compl. ¶¶ 138–39.

In the District of Columbia, a defendant is not excused from the harm caused by his

misrepresentations simply because the plaintiff did not personally hear the defendant's

utterances.  Rather, the District of Columbia adheres to the general rule that the maker of

material misrepresentations may be held liable for losses incurred by third parties who

reasonably rely on those representations, so long as the third party falls within an identifiable

class of persons that the defendant intended to influence.  *See Nader v. Allegheny Airlines, Inc.*,

512 F.2d 527, 547–49 (D.C. Cir.1975), *rev'd on other grounds*, 423 U.S. 946 (1975) (holding

that plaintiff could recover for fraudulent misrepresentation under D.C. law despite the fact that

he "was not in privity with [defendant], nor was he identified as a person to whom the

misrepresentation was directed" because "he was within an identifiable class of third persons . . .

that [defendant] intended to influence"); *Armstrong v. Accrediting Council for Continuing Educ.*

*& Training, Inc.*, 961 F. Supp. 305, 309 (D.D.C. 1997) ("[U]nder D.C. law, parties who make

representations to second parties can be liable to third parties who act on these representations if

such reliance is reasonably expected."  (citing *Remeikis v. Boss & Phelps, Inc.*, 419 A.2d 986,

991 (1980))); *Mills v. Cosmopolitan Ins. Agency, Inc.*, 424 A.2d 43, 49 (D.C. 1980) ("[T]he

generally accepted rule . . . [is] that the maker of a fraudulent misrepresentation is liable to those

he intends to influence." (quoting *Nader*, 512 F.2d at 547) (alterations in original)); Restatement

(Second) of Torts § 533 (1977) ("The maker of a fraudulent misrepresentation is subject to

liability for pecuniary loss to another who acts in justifiable reliance upon it if the

misrepresentation, although not made directly to the other, is made to a third person and the

maker intends or has reason to expect that its terms will be repeated or its substance

communicated to the other, and that it will influence his conduct in the transaction or type of

transaction involved.").  Thus, defendants may be held liable, for example, "if plaintiff 'can establish that he relied upon . . . [the misrepresentation] to his detriment, and that defendants intended the misrepresentation to be conveyed to him.'"  *Mills*, 424 A.2d at 49 (quoting *Peerless Mills, Inc. v. American Telephone & Telegraph Co.*, 527 F.2d 445, 450 (2d Cir. 1975) (alterations in original).

Although it is not necessarily fatal to Bloomfield's claims that some or all of the alleged misrepresentations at issue were relayed to it, the Court finds that Bloomfield's allegations are still inadequate.  While Bloomfield has added some additional details about how it came to learn about the North Star program and the nature of the representations that allegedly caused it to apply for the loans, there is still very little context in which to understand the circumstances of the alleged misstatements.  Indeed, all that is alleged is that Bloomfield's advisor spoke with Mr. Vetter, Mr. Vetter made certain alleged misrepresentations concerning due diligence of North Star, and that those representations were then conveyed to Bloomfield.  The Amended Complaint does not specify when or where Mr. Vetter's representations were made nor provide any other context or insight into the interactions between Mr. Vetter and the unnamed advisor.  For example, it is not alleged that Mr. Vetter knew that the advisor was inquiring on behalf of others nor is there any other context from which to infer that Mr. Vetter intended or reasonably expected his statements to be relayed to potential North Star applicants.  Consequently, there is no basis to infer that the NAHB intended to influence Bloomfield or any other third parties by making the alleged misrepresentations.  Thus, with regard to the initial application to the North Star program, Bloomfield has failed to allege any claim for fraudulent misrepresentation or negligent misrepresentation with sufficient particularity.

The allegations about the "contacts" with Mr. Judson prior to the second loan application are similarly deficient.  Indeed, the allegations are entirely vague and confusing.  The entirety of Bloomfield's allegations are that "[b]etween March 12 and May 6, 2014 and thereafter, [Bloomfield], along with [its] advisor, had contacts with Rick Judson, who added assurances that the North Star program was safe."  Am. Compl. ¶ 144.  From this, many things are unclear.  First, it is unclear whether the "added assurances" that North Star was "safe" were made in a single misstatement or multiple misstatements that occurred over some period of time.  Likewise, one cannot discern when any alleged misrepresentation may have occurred, given that Bloomfield only specifies when the "contacts" with Mr. Judson happened and gives an open-ended time frame of March to May, 2014 "*and thereafter.*"  It is also unclear where or how these misstatements were communicated to Bloomfield.  Indeed, it is not even clear to whom Mr. Judson made the alleged misrepresentations.  Were the misrepresentations made to Bloomfield directly?  To Bloomfield's advisor?  Or both simultaneously?  If they were made only to Bloomfield's advisor, were those misstatements made under circumstances from which it would be reasonable to infer that Mr. Judson intended to influence Bloomfield or other third parties?  And did the advisor relay any misstatements to Bloomfield?  All this is to say that the allegations about "contacts" with Mr. Judson cannot form the basis of Bloomfield's claims because they fall short of meeting Rule 9(b)'s particularity requirement.

In short, Bloomfield has failed to plead its claims with sufficient particularity and has not demonstrated a right to relief above a speculative level.  For these reasons, the Court will dismiss Bloomfield's claims, but will afford one more opportunity to remedy the defects in the complaint.  Where a pleading does not satisfy the heightened requirements of Rule 9(b), the court should freely grant leave to amend.  *See Firestone v. Firestone*, 76 F.3d 1205, 1209 (D.C.

Cir. 1996) (recognizing that courts almost always grant leave to amend to cure deficiencies in pleading fraud). The Court believes that, while Bloomfield has already had one opportunity to cure its allegations, Bloomfield should be given one final chance to adequately state its claims.

## 2. Boomer

The Court next turns to Plaintiff Boomer's claims. In the prior Complaint, Boomer alleged that the "manner and timing of the announcement of the North Star Program" at the NAHB's 2014 Home Builders Show caused it to "reasonably believe[] that the NAHB had diligently investigated the North Star program prior to allowing it to be offered at the Show." Compl. ¶ 34. The Court held that these allegations were not sufficient to meet Boomer's pleading burden because Boomer failed to allege that the NAHB actually made any misstatements concerning its due diligence of North Star or made any other material representations upon which Boomer might have reasonably relied. Boomer has attempted to cure this deficiency by adding additional details. Specifically, Boomer alleges:

> The presenters, including Tom Vetter, and Rick Judson, the NAHB Chairman, who appeared on behalf of the NAHB, told Mr. Hutchison and all of the attendees, that the North Star loan program was sound; that the NAHB had worked with North Star over many months to develop the program; and that the program would be of great value to NAHB members. They added that the program would be a new source of revenue for the NAHB. Judson indicated that he was fulfilling his earlier promise to secure financial assistance to builders as the cornerstone of his chairmanship.

Am. Compl. ¶ 35. The NAHB argues that these additional allegations continue to be insufficient "because it does not identify with specificity the individual 'who allegedly made each of the representations.'" Def.'s Mot. Dismiss at 10. The NAHB argues that the Amended Complaint attributes the statements to "'the presenters,' which included Vetter and Judson, but were not limited to either of those two individuals." Def.'s Mot. Dismiss at 10. The Court is not persuaded.

While it is true that Boomer has not delineated each individual NAHB presenter other than Mr. Vetter and Mr. Judson, the Court is satisfied that "there is sufficient substance to the allegations to both afford the defendant the opportunity to prepare a response and to warrant further judicial process." *United States ex rel. Heath v. AT & T, Inc.*, 791 F.3d 112, 125 (D.C. Cir. 2015). To start, Boomer has, at the very least, provided the identities of two NAHB employees who made the supposed misrepresentations upon which Boomer allegedly relied. To the extent that there were other "presenters," Boomer has alleged that they were presenters that "appeared on behalf of NAHB" at NAHB's own 2014 Home Builders' Show. *See* Am. Compl. ¶ 35. Consequently, the Court has no reason to believe that the NAHB will be hampered in its ability to defend itself. Courts faced with similar circumstances have likewise held that failure to precisely name an employee is not necessarily fatal to a claim of fraud. *See Odom v. Microsoft Corp.*, 486 F.3d 541, 554–55 (9th Cir. 2007) (holding that "in the circumstances of a retail transaction whose full consequences are realized only months later, the employee of the store need not be named" when there is "no reason to believe that defendants will be hampered in their defense by [plaintiffs'] inability to name the particular employees"). Thus, Boomer may continue to pursue its claims.

### 3. Davis

Plaintiff Davis's restated claims likewise withstand scrutiny. Previously, Davis alleged that it would not have applied for a loan from the North Star program in the absence of the "assurances," "assistance," and "support" provided by NAHB. Compl. ¶¶ 75, 94. The Court held that Davis's generalized allegations did not satisfy Rule 9's pleading standard because Davis does not allege the time or place of any misrepresentation or in any way describe the nature of the "assurances," "assistance," and "support" that NAHB allegedly provided. *See*

Mem. Op. at 22 (citing *Carter v. Bank of Am., N.A.*, 888 F. Supp. 2d 1, 14 (D.D.C. 2012)). Davis has since tried to cure these defects. Davis now alleges that, after first learning of the program in March 2014, it reached out to Mr. Vetter to learn more about the program and communicated with him over both email and telephone. *See* Am. Compl. ¶¶ 98, 102. According to the Amended Complaint, "[d]uring these communications, usually by phone, Mr. Vetter related to Mr. Davis that the NAHB had worked with North Star for the past year to develop the program; that the program was sound; that North Star would not risk its license by cheating any applicants; and repeatedly assured Mr. Davis that it was 'an NAHB program' that could be trusted." Am. Compl. ¶ 103.

The NAHB argues that the new allegations are still deficient because "Davis is intentionally vague as to when these alleged contacts occurred" and because Davis "does not allege that any of Vetter's alleged representations in fact occurred before Davis submitted its loan application and payment to North Star." Def.'s Mot. Dismiss at 12. While Davis has not provided any specific dates on which it communicated with Mr. Vetter, construing the allegations liberally, it appears that there were multiple conversations between March 2014, when Davis learned about the program, and April 14, 2014, when Davis applied for the North Star Program. *See* Am. Compl. ¶¶ 97, 102–03, 105–06. Indeed, Davis claims that the communications occurred "after learning of the North Star program" and that Davis "would not have applied for loans from the North Star program in the absence of the assurances and assistance provided by Mr. Vetter . . . ." Am. Compl. ¶¶ 102, 106. Thus, it is reasonable to infer that the communications Davis identified in the Amended Complaint occurred sometime between March and April 2014. Because Davis has identified the nature of the alleged representations, identified the individual responsible for those representations, that the

communications occurred over email and telephone, and has identified—albeit implicitly—a short period of time over which the multiple communications allegedly occurred, the Court is convinced that Davis has provided adequate notice of the specifics of its fraud claims to allow NAHB to prepare its defense. *See Daisley v. Riggs Bank, N.A.*, 372 F. Supp. 2d 61, 79 (D.D.C. 2005) (When a "complaint includes the subject matter of the alleged misrepresentation, identifies which defendant allegedly made the misrepresentation, and attributes the misrepresentation to a particular period of time," plaintiff has pled "sufficient information, as contemplated by Rule 9(b), to give defendants 'adequate notice of the specifics of' [Plaintiff]'s fraud claim."); *United States ex rel. Folliard v. CDW Tech. Servs., Inc.*, 722 F. Supp. 2d 20, 31–32 (D.D.C. 2010) (alleging fraud over a period of time is permissible when the "time span of the scheme is not open-ended, and it give[s] the [defendant] sufficient information to allow for preparation of a response.") (internal quotes and citations omitted). Consequently, the Court finds that dismissal of Davis's claims is unwarranted.

### 4. Biltmore

Finally, the Court considers the new allegations concerning Plaintiff Biltmore. Previously, this Court found that Biltmore had failed to allege any misrepresentations that the NAHB made prior to Biltmore applying for the North Star program or submitting payment. Mem. Op. at 25. Thus, the Court found that Biltmore had not adequately alleged the element of reliance and that Biltmore's claims must be dismissed. Mem. Op. at 25. Biltmore has sought to cure this deficiency by adding allegations concerning statements that Mr. Vetter allegedly made to Biltmore prior to Biltmore's submission of its loan application to North Star. The NAHB argues, however, that these allegations are still insufficient because they neither identify the

place where the representations were made or otherwise allege that the statements were made via telephone or email. *See* Def.'s Mot. Dismiss at 12–13.

Although the Amended Complaint does not specify where the alleged misrepresentations were made or otherwise specify the means through which they were communicated, the Court is not persuaded that this lack of detail renders Biltmore's claim insufficient for purposes of Rule 9(b). *See Towers Fin. Corp. v. Solomon*, 126 F.R.D. 531, 535 (N.D. Ill. 1989) ("While plaintiffs do not set forth the place where the fraud allegedly transpired, the absence of the location of the fraud does not necessarily render plaintiffs' fraud claim insufficient for purposes of Rule 9(b)" because "[t]he claim must be viewed as a whole."); *Stith v. Thorne*, No. 06-cv-00240, 2006 WL 5444366, at *13 (E.D. Va. Oct. 30, 2006) (holding that fraud allegations were sufficiently particular for purposes of Rule 9(b) even though "the Complaint [did] not allege the place of the misrepresentations"). According to the Amended Complaint, between February 20, 2014 and February 27, 2014, Biltmore "contacted Mr. Vetter" and inquired about the legitimacy of the North Star Program. Am. Compl. ¶¶ 119–120. Mr. Vetter allegedly responded that he and others at NAHB had spent months tailoring the North Star Program to the needs of NAHB members and that the NAHB had performed background checks on North Star and were satisfied that the loan program was sound and that North Star had closed several loans under a similar program. Am. Compl. 121–22. He emphasized further that the "NAHB had checked North Star out." Am. Compl. ¶ 123. In reality, according to the Amended Complaint, no such review was ever performed. Am. Compl. ¶ 188. Under the circumstances, the Court is satisfied that the Amended Complaint affords the NAHB an adequate opportunity to prepare a defense to the allegations despite the absence of any allegation concerning the place or means of communication and thus will not dismiss Biltmore's claims.

*     *     *

For the reasons stated above, the Court will grant NAHB's motion to dismiss with respect to Plaintiff Bloomfield, but will deny the motion with respect to Plaintiffs Boomer, Davis, and Biltmore. The Court will allow Plaintiff Bloomfield one final opportunity to adequately plead its claims. *See Firestone v. Firestone*, 76, F.3d 1205, 1209 (D.C. Cir. 1996) ("Failure to plead fraud with particularity . . . does not support a dismissal with prejudice. To the contrary, leave to amend is 'almost always' allowed to cure deficiencies in pleading fraud.").

## B. Motion to Sever

The Court next considers NAHB's motion to sever. While misjoinder of claims is not grounds for dismissal of an action, Rule 21 of the Federal Rules of Civil Procedure authorizes courts to sever parties or claims that have been misjoined. *See* Fed. R. Civ. P. 21. "Although the court must exercise its discretion in deciding whether to sever under Rule 21, 'it is well-settled that parties are misjoined when the preconditions of permissive joinder set forth in Rule 20(a) have not been satisfied.'" *Disparte v. Corp. Exec. Bd.*, 223 F.R.D. 7, 12 (D.D.C. 2004) (quoting *Puricelli v. CNA Ins. Co.*, 185 F.R.D. 139, 142 (N.D.N.Y. 1999) (citations omitted)).

"The purpose of Rule 20 is to promote trial convenience and expedite the final resolution of disputes, thereby preventing multiple lawsuits, extra expense to the parties, and loss of time to the court as well as the litigants appearing before it." *M.K. v. Tenet*, 216 F.R.D. 133, 137 (D.D.C. 2002). Rule 20(a)(1) provides that Plaintiffs may join together in one action if they seek relief "with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences" and "any question of law or fact common to all plaintiffs will arise in the action." Fed. R. Civ. P. 20(a)(1). However, even if these requirements are satisfied, a court may still decide, in the exercise of its sound discretion, to sever the claims. *See M.K.*, 216 F.R.D. at

137. Indeed, claims may still be severed "upon a sufficient showing of prejudice to the defendant, delay, or potential for jury confusion." *Alexander v. Edgewood Management Corp.*, 321 F.R.D. 460, 464 (citing *Montgomery v. STG Int'l, Inc.*, 532 F. Supp. 2d 29, 35 (D.D.C. 2008); *see also Davidson v. D.C.*, 736 F. Supp. 2d 115, 120 (D.D.C. 2010); *Disparte*, 223 F.R.D. at 12; *Brereton v. Comms. Satellite Corp.*, 116 F.R.D. 162, 163 (D.D.C. 1987) ("Rule 21 must also be read in conjunction with Fed. R. Civ. P. 42(b), which allows the Court to sever claims in order to avoid prejudice to any party.").

The NAHB's main argument is that Plaintiffs' claims should be severed because they do not arise from the same transaction, occurrence, or series of transactions and occurrences. *See* Def.'s Mot. Sever at 5–7. In this Circuit, the term "transaction or occurrences" is "interpreted broadly to permit all reasonably related claims for relief by or against different parties to be tried in a single proceeding." *In re Vitamins Antitrust Litig.*, No. MISC 99-197 (TFH), 2000 WL 1475705, at *18 (D.D.C. May 9, 2000) (quotations omitted). This logical relationship test is a flexible one because "the impulse is toward entertaining the broadest possible scope of action consistent with fairness to the parties; joinder of claims, parties and remedies is strongly encouraged." *Disparte*, 223 F.R.D. at 10 (quoting *United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 724 (1966)). Under this logical relationship test, Courts "consistently deny motions to sever where [the] plaintiffs allege that [the] defendants have engaged in a common scheme or pattern of behavior." *In re Vitamins Antitrust Litig.*, 2000 WL 1475705, at *17 (D.D.C. 2000) (citing *Brereton v. Communications Satellite Corp.*, 116 F.R.D. 162, 164 (D.D.C. 1987)).

In this case, the Court easily concludes that Plaintiffs' claims arise from the same series of transactions and occurrences. There is a rather obvious logical relationship between Plaintiffs' claims: all of the Plaintiffs allege that they were defrauded by North Star because

NAHB representatives falsely assured them that the program was safe and that the NAHB had conducted an appropriate level of due diligence on the company and the program. This is precisely the type of "common scheme or pattern of behavior" that courts frequently find satisfies the logical relationship test. *See Green v. Beer*, No. 06-4156, 2009 WL 3401256, at *7 (S.D.N.Y. Oct. 22, 2009) (holding plaintiffs' claims were "logically related and satisf[ied] the 'same transaction or occurrence' requirement where "the statements and representations made to all Plaintiff groups were 'substantively similar'" and the scheme was "promoted with the assistance of various representatives who—intentionally or unwittingly—conveyed information that Plaintiffs now claim was fraudulent"); *McAfee v. Francis*, No. 11-0821, 2012 WL 762118, at *4 (N.D. Cal. Mar. 6, 2012) ("Plaintiffs' claims of negligent misrepresentation (and of fraud, should they adequately re-allege a claim for fraud in an amended complaint) are grounded in the common scheme alleged to be [Defendant's] Ponzi scheme, and therefore arise from the same series of transactions or occurrences."); *Doe XX v. Boy Scouts of Am.*, No. 17-0184, 2017 WL 5591592, at *2 (D. Idaho Nov. 20, 2017) ("Plaintiffs here each allege that [Defendants] knew sex abuse occurred in Scouting generally and that they knew that the perpetrators who abused the Plaintiffs had previously abused other boys; that Defendants chose not to disclose these facts to the scouts or their parents; that Defendants instead represented that scouting was safe and that scouts should trust their scout leaders; and that Plaintiffs were abused by scout leaders, had joined scout troops, and had relied on Defendants' alleged misrepresentations in deciding to join. . . . These connections are sufficient to show that Plaintiffs' claims are logically related and arise from a similar factual background."); *M.K. v. Tenet*, 216 F.R.D. at 142 (concluding that "the alleged repeated pattern of obstruction of counsel . . . is 'logically related' as 'a series of transactions or occurrences' that establishes an overall pattern of policies and practices"). Thus,

the Court concludes that Plaintiffs' claims arise from the same series of transactions and occurrences for purposes of Rule 20(a)(1).

The NAHB also argues that Plaintiffs fail to satisfy the second prong of the permissive joinder test because their claims do not raise common issues of fact or law. Def.'s Mot. Sever at 7–8. But Rule 20(a) "requires only that there be some common question of law or fact as to all of the plaintiffs' claims, not that all legal and factual issues be common to all the plaintiffs." *Disparte*, 223 F.R.D. at 11 (citing *Mosley*, 497 F.2d at 1334). In this case, there is a common question of fact that flows directly from the common nature of the alleged misrepresentations. That is, there is a common question concerning the level and extent of NAHB's due diligence of North Star and its loan program. This factual issue bears on the truth or falsity of the alleged representations, which is of course a central part of each claim asserted by Plaintiffs. Consequently, the Court finds that Plaintiffs have satisfied Rule 20(a)(1)'s requirements for permissible joinder of claims.

NAHB makes one final argument: it argues that Plaintiffs' claims should be severed to avoid prejudice to NAHB. Def.'s Mot. Sever at 9. NAHB contends that, because the circumstances underlying the claims of each Plaintiff is different and those differences will bear on the validity of those claims, that there is "a strong likelihood of jury confusion and comingling of the alleged misrepresentations" if the Plaintiffs are permitted to collectively present evidence against NAHB. If this case were to be tried by a jury, this would perhaps constitute a substantial risk of prejudice. *See Grayson v. K-Mart Corp.*, 849 F. Supp. 785, 790–91 (N.D. Ga. 1994). However, Plaintiffs have not requested a jury trial. Thus, the risk of prejudice is greatly diminished, as this Court is perfectly capable of determining the facts with

respect to each Plaintiff and holding each of them to their burdens of proof.[3]  Thus, NAHB has

failed to show that any prejudice outweighs the policy goals of permissive joinder, which

"promote[s] trial convenience and expedite[s] the resolution of lawsuits."[4]  *Puricelli*, 185 F.R.D.

at 142.  For these reasons, the Court will deny Defendant's motion to sever the Plaintiffs' claims.

## IV.  CONCLUSION

For the foregoing reasons, Defendant's Partial Motion to Dismiss Amended Complaint

(ECF No. 38) is **GRANTED IN PART AND DENIED IN PART** and Defendant's Motion to

Sever Claims and Parties (ECF No. 40) is **DENIED**.  An order consistent with this

Memorandum Opinion is separately and contemporaneously issued.

Dated: March 26, 2018                                       RUDOLPH CONTRERAS
                                                            United States District Judge

---

[3] In its reply, NAHB acknowledges that "the risk of confusion to the factfinder, in this case the Court, is low . . . ."  Def.'s Reply Supp. Mot. Sever at 7.

[4] NAHB weakly argues, contrary to conventional wisdom, that severance of claims would somehow streamline discovery and aid judicial economy, despite conceding the need for "overlapping discovery."  Def.'s Mot. Sever at 10.  The Court is not persuaded by NAHB's argument and has no reason to believe that separating this matter into eight separate proceedings would be in anyway more expeditious than a single action.